Mr. Barry Emigh 1720 Arrowhead, Apt. O North Little Rock, AR 72118
Dear Mr. Emigh:
This is in response to your request for certification, pursuant to A.C.A. § 7-9-107 (Repl. 1993), of the following popular name and ballot title for a proposed "act" to the Arkansas Constitution:
 POPULAR NAME PROVIDE FOR THE IDENTIFICATION, AND PROHIBITION OF ACLOHOL [SIC], AND FIREARM PURCHASES FROM THOSE PERSONS CONVICTED OF AN ALCOHOL OFFENSE, AND OR PROHIBITED FROM THE POSSESSION OF A FIREARM
 BALLOT TITLE ACT TO INDENTIFY [SIC] ANY PERSON CONVICTED OF AN ALCOHOL OFFENSE, AND OR PROHIBITED FROM THE POSSESSION OF A FIREARM; TO PROVIDE FOR THE PROHIBITION ON THE PURCHASE OF ALCOHOL, AND OR A FIREARM; TO PROVIDE FOR FINES FOR ANY VIOLATION OF THIS ACT; TO PROVIDE FOR THE REPEAL OF PRIOR CONSTITUTIONAL AND STATUTORY PROVISIONS INCONSISTENT WITH THIS ACT AND PROVIDE SEVERABILITY
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to approve and certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition.
A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment. See Arkansas Women's Political Caucusv. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v.Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185 (1958); Beckerv. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555 (1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277, 285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418, 798 S.W.2d 34 (1990); Gaines v.McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; andWalton v. McDonald, 192 Ark. 1155, 97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. §7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line.Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v.McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen,318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v.McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall,232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject both your proposed popular name and ballot title due to several unresolved ambiguities in the text of your proposed measure. There are a number of additions or changes to your popular name and ballot title which in my view are necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of these ambiguities. I am therefore unable to substitute and certify a more suitable and correct ballot title under A.C.A. § 7-9-107(b).
Ambiguities, grammatical and syntax errors occur throughout your proposed amendment. At a minimum, however, the following ambiguities must be clarified in both your measure and ballot title:
 1) As an initial matter, the introductory portion of your petition states "[w]e the undersigned legal voters of the State of Arkansas respectfully propose the following act to the Constitution of the State of Arkansas. . . ." (Emphasis added). The measure at issue is referred to consistently throughout the various sections as an "act," or a "[c]onstitutional act." See, e.g., Sections 4 and 5 respectively. The provisions of your proposed measure also provide, however, for the repeal of all laws and constitutional provisions in conflict with "this act." Section 6. "Acts," whether adopted by the General Assembly, or through initiated action of the people, are entirely distinct from amendments to the Arkansas Constitution. An "act" cannot repeal a constitutional provision. There is to my knowledge, in this sense, no such thing as a "Constitutional Act." I cannot determine from your submission, therefore, whether you are proposing an initiated "act," or an amendment to the Arkansas Constitution.
 2) Your proposed measure requires the establishment of a system to identify persons convicted of "alcohol offense[s]" or "alcohol related offense[s]." These terms are not defined in your measure and a question arises in my view as to how expansively these terms are to be construed. A large number of criminal offenses are listed in the Arkansas Code that have some connection to or relate in some way to alcohol. Many are listed not in the criminal code, but in the statutes governing alcoholic beverages. The uncertainty regarding which criminal offenses trigger the prohibitions of you measure may give a typical voter serious ground for reflection.
 3) Your proposed measure also requires the identification of persons who were "under the influence of alcohol while committing a violation of any other law." A question arises as to what proof will be required to support such a finding. Questions arise as to whether this portion of your amendment places a new duty on courts to make separate findings as to the influence of alcohol in the commission of crimes. It is unclear how this determination will be made in the event the alcohol consumption itself is not a criminal offense for which the defendant can be "convicted."
 4) An additional ambiguity arises from Section 2 of your proposed measure. This Section sets out the penalties and loss of privileges attendant conviction of an alcohol related offense. For a first offense, the defendant must surrender his driver's license and have a new one "reissued for no more than two (2) years" with the words "Alcohol Prohibited" written [thereon]." (Emphasis added). Questions arise as to whether this penalty period can be" less than" two years, and whether the court or some other entity is responsible for determining the length of the prohibition.
 5) Additional ambiguities arise from Section 2. For a second offense "while on probation for an alcohol offense, and prohibited from the purchase of alcohol," the defendant shall "further be prohibited from the purchase of alcohol for not less than four (4) years, but not to exceed eight (8) years for each additional violation thereafter within the discreation [sic] of the court." An ambiguity arises as to the punishment for a second, third, or subsequent offense which occurred after the expiration of the probationary period. A question arises as to whether there is any prohibition against the purchase of alcohol by a person convicted of a second, third or subsequent alcohol offense, if the conviction did not occur during the initial probationary period. This fact may give the typical voter serious ground for reflection. Similar ambiguities arise in Section 4 of your proposed measure.
 6) Section 2 of your proposed measure also authorizes "[t]he state, and subdivisions thereof" to assess an additional cost on the purchase of a state-issued driver's license by persons prohibited from the possession of alcohol or firearms. Subdivisions of the state do not, under current law, have the authority to issue driver's licenses. See A.C.A. § 27-16-602(d). Questions arise as to whether your proposed measure grants political subdivisions this authority and/or how the fees will be collected and distributed.
 7) Ambiguities also arise from Section 4 of your proposed measure, which penalizes persons who sell alcohol or firearms to persons prohibited from purchasing the same. Specific fines and probationary periods are set forth. Questions arise as to whether the offenses listed in this section are misdemeanors or felonies. Current state law sets the maximum penalties for the different classification of offenses. See, e.g., A.C.A. §§ 5-4-201 and 5-4-401.
 8) An additional ambiguity arises from Section 5 of your proposed measure, which makes the measure "effect[ive] immediately upon passage." Questions arise as to whether the measure applies only to actions occurring after the effective date, which ultimately give rise to disqualifying convictions, or to pending criminal cases which have not yet led to a conviction, or whether in fact your proposed measure will apply to convictions already entered prior to the effective date of the act. Constitutional questions regarding the applicability of the "ex post facto" clauses of the Arkansas and United States Constitutions may also arise depending upon the construction of your measure in this regard.
The list of ambiguities above is not intended to be all-inclusive. As noted above, ambiguities, grammatical and syntax errors occur throughout your proposed amendment. Consultation with legal counsel of your choice, or a person skilled in the drafting of legislation is recommended.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107
and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finnv. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). You may, after clarification of the issue discussed above, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
MARK PRYOR Attorney General
Enclosure